## WALSH v. O'DELL, et al.

Circuit Court, Sumter County.

May 17, 1954.

P. B. Howell, Bushnell, for plaintiff.

Carroll W. Fussell, Bushnell, for defendants.

T. G. FUTCH, Circuit Judge.

This case involves the closing or barricading of a road in Sumter County, approximately two miles in length by the owner of the land. Plaintiff was using the road for the purpose of hauling logs by truck from certain lands in the county known as "the Monarch property." For many years this property was an institution known far and wide in Florida and, in its pristine glamorous history, was the annual winter rendezvous of its wealthy owners from the north and a select few local dignitaries who were allowed to share its hospitality, enjoying in addition quite a reputation for the production of choice oranges. In late years it has receded to a state of innocuous desuetude and is now undergoing the last sad rites of having its bones picked clean of timber and other things of value which were preserved intact during those years of glamour.

The road in question leads from the town of Coleman in Sumter County in a northerly direction across lands owned by one of the defendants and the Monarch property, intersecting state road 44 about 1½ miles west of the town of Wildwood. The particular portion of the road in question is that portion thereof extending in a southerly direction from the Monarch property across the land of the defendant to Coleman, a distance of about two miles. According to the preponderance of the evidence this road has been in use during a time whereof the memory of man runneth not to the contrary. It does not enjoy the distinction of ever having been formally designated a public road by the governing authorities of Sumter County or of Benton County (from which Sumter County was originally carved)—like Topsy, "it just growed." It extends across the Seaboard Railway tracks just north of Coleman and the railway has long recognized its existence by maintaining a crossing for the use of those having occasion to travel it.

There is evidence in the record that this road was used for many years by persons having business across the river in Citrus County and its county seat, Inverness. The record also shows that the road was used by people going into the woods on hunting expeditions and that people in general have had access to and have made use of the road in all respects as a public road.

The defendant W. M. O'Dell acquired the land which this road traverses in 1938 and transferred title to the defendant James M. O'Dell, his son, about two years prior to the institution of this suit. While title is vested in the son it is quite evident that the father

continues to call the dance so far as the use of the property is concerned. Mr. O'Dell, Sr. testified that he had been familiar with this road for a period of 60 or 70 years and knew it before the day of the founding of the Monarch property.

One J. P. Smith who was called as a plaintiff's witness testified that he was 78 years old and that he had lived at Coleman for 50 years and that he traveled over the road in question when he moved to Coleman 50 years ago, that it was used by the general public at that time and has continuously been so used to the present time, that it has never been closed except for about two weeks (just a short time before he gave his testimony when it was closed by defendants), that he was at one time road foreman in the Coleman District and had been for a good while and that the county had done work on the road up until the plaintiff started hauling logs over it and that as such foreman he kept the road up.

W. B. Stokes was called as a witness for the defendants and testified he had been familiar with the road and had used it in the livery stable business 49 or 50 years ago.

Throughout the testimony of witnesses for both the plaintiff and the defendants is to be found evidence that the federal government acting through the W.P.A. did considerable work on the road while that agency was functioning throughout the country. It is a fact well known to everyone (and of which this court will take judicial knowledge) that this agency did not approve or allow work to be done on any project that was not of a public nature and that in the matter of roads outside towns and cities the projects were invariably sponsored by the boards of county commissioners in the several counties of this state.

Considering the testimony for both the plaintiff and the defendants the conclusion is inescapable that the road in question has been a public road used in general by the public without interruption for a period far in excess of twenty years.

Defendants undertake to limit the use thereof to the occupants of the Monarch property and to those having business with the Monarch people. It may be true that a majority of the people traveling the road were en route to that property, but that does not in itself strip it of its public character since it was open to and was subject to use by and was in fact used by others. There are many public roads in this state used mainly to go to a particular place and for a particular purpose, such as public bathing places, country stores, small towns, schools, churches and cemeteries—but the fact that they are used for a primary purpose does not rob them of their public character.

Even, however, if the use of the road were to be limited to those having business on the Monarch property plaintiff would still be entitled to the relief he seeks because his business is shown to be hauling logs from that property.

No question has been raised before the court as to the plaintiff's right to maintain this action. That question is not before the court and will not be considered further than to state that the pleadings and evidence show that the plaintiff has a special and valuable interest at stake in keeping the road open.

It follows that decree should be entered in plaintiff's favor as prayed in and by his bill of complaint, and decree will accordingly be so entered. Costs will be taxed against defendants. Plaintiff's solicitor will prepare a decree in accord with these findings, submitting same to the court for entry.